UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
San Antonio Division

| | |
|---|---|
| Leland McRae,<br><br>Plaintiff,<br><br>v.<br><br>First Enroll LLC, National Benefit Builder, Inc., National Congress of Employers Inc., American Financial Security Life Insurance Company,and John/Jane Does 1-5.<br><br><br>Defendant(s). | §§§§§§§§§§§§ Civil Action No: 5:21-cv-00988 |

**Plaintiff's Original Complaint**

**Parties**

1. The Plaintiff is Leland McRae, a natural person, who was present in Texas for all calls at issue in this case, residing in Bexar County.

2. Defendant First Enroll LLC ("First Enroll") is a limited liability company that can be served via registered agent Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, New Jersey 08628.

3. Defendant National Benefit Builders, Inc. ("NBB") is a New Jersey corporation headquartered at 25 Hanover Road, Florham Park, New Jersey 07932. NBB has a relationship with the National Congress of Employers, Inc. ("NCE") to market NCE-branded health or insurance-related discount products and, on information and belief, coordinated the

marketing of NCE memberships to Plaintiff.

4. Defendant National Congress of Employers, Inc. is a Delaware corporation headquartered, on information and belief, at 100 Garden City Plaza, Suite 102, Garden City, New York 11530.

5. Defendant American Financial Security Life Insurance Company ("American Financial") is a Missouri corporation headquartered at 55 NE 5th Avenue, Suite 502, Boca Raton, Florida 33432.

## JURISDICTION AND VENUE

6. **Jurisdiction**.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Texas Business and Commerce Code 305.053, and 17.46 because these claims: arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff adds little complexity to the case and does not seek money damages, so it is unlikely to predominate over the TCPA claims.

7. **Personal Jurisdiction.**  This Court has general and specific jurisdiction over the Defendants because they have repeatedly placed calls to Texas residents, derive revenue from Texas residents, sells goods and services to Texas residents, including the Plaintiff and committed a tort in Texas by violating the TCPA. *47 US Code §227(e)(9)(g)(4)* and *The Texas Business and Commerce Code 305.053; See also Tex. Civ. Prac. & Rem. Code § 17.042 (2)*. This Court has specific personal jurisdiction over the Defendants because the calls at issue were made by or on behalf of the Defendants into this district, and the Plaintiff resides in this district. *47 US Code §227(e)(9)(g)(4).*

8. **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this

District and was residing in the Western District of Texas when he received every call from the Defendants that are the subject matter of this lawsuit This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above named Defendants to the Plaintiff a Texas resident. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular a consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013). "Those principles, the FCC concluded, 'include not only formal agency, but also principles of apparent authority and ratification.'" ( quoting *In re Joint Petition Filed by Dish Network, LLC*, et al., 28 F.C.C. Rcd. 6574 at ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053 and 304.151

22. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

24. Defendant(s)' insurance products are solicited together as a package.

### Defendants calls to the Plaintiff

25. Defendant First Enroll solicits business by way of national telemarketing campaigns offering health insurance plans on behalf of Defendant(s) NCE, NBB and American Financial by using artificial pre-recorded messages.

26. On March 25, 2020 Plaintiff received one of many artificial pre-recorded calls soliciting him to purchase health insurance from Defendant(s). During this call Plaintiff was live-transferred to Defendant First Enroll to complete the purchase of the health insurance being offered by Defendant(s) NCE, NBB, and American Financial.

27. Plaintiff received multiple calls from misleading caller ID numbers from Defendant First Enroll. This deceptive tactic leads the consumer into believing a hometown friend, family member or important concern is calling when in fact the Defendant First Enroll is in another geographic location entirely with no physical presence in the areas presented by the caller ID. The calls below were placed on behalf of Defendant First Enroll, NCE, NBB and American Financial, but this is not an exhaustive list.

| CID | Date | Calls to 248-420-4042 |
|---|---|---|
| 407-645-2500 | 03/16/2020 | |
| 330-331-6939 | 03/162020 | |
| 762-201-3959 | 03/20/2020 | |
| 231-221-8781 | 03/20/2020 | |
| 276-212-7230 | 03/23/2020 | |

28. The calls to Plaintiff were for the purpose of selling a health insurance plan on behalf of

Defendant NCE, NBB and American Financial.

29. Defendant First Enroll, through its agreements with Defendant NCE,NBB and American Financial, authorized the calls at issue; Defendant(s) First Enroll and NCE, NBB and American Financial controlled the telemarketing at issue by providing the proprietary product and pricing information that the telemarketers used; First Enroll reviewed and approved the scripts for the telemarketing calls made on its behalf; Defendant(s) First Enroll NCE, NBB and American Financial financially benefited from the telemarketing; and Defendant(s) First Enroll, NCE, NBB and American Financial ratified the telemarketing calls by continuing to provide proprietary product and pricing information resulting in sales from these calls.

30. The Defendant First Enroll was soliciting Plaintiff to purchase a health insurance plan on behalf of Defendant NCE, NBB and American Financial without maintaining a written do-not-call policy and failed to identify as required under the TCPA.

31. Defendant NCE, NBB and American Financial have been sued as co-Defendants for these same allegations involving their agents numerous times.

32. Defendant(s) knew full well that their employees and/or agents were making calls with artificial pre-recorded messages, while not maintaining a written do-not-call policy and making calls from misleading caller ID numbers.

33. Mr. McRae has limited data storage capacity on his cellular telephone. Incoming calls from Defendant(s) and its employees consumed part of this capacity. Plaintiff's privacy was also invaded.

34. The calls were unwanted by the Plaintiff.

35. No emergency necessitated any of the calls at issue.

36. Each call was sent by an Automated Telephone Dialing System (ATDS) and involved artificial pre-recorded messages.

### Defendants Knowing and Willful Violations of Telemarketing Regulations

37. Annoyed by the frequency of the calls from Defendant(s), on or about April 20, 2020 Mr. McRae asked for an internal do-not-call policy and the Defendant First Enroll indicated they did not have a written internal do-not-call policy to send him.

38. Defendants knowingly violated the TCPA by initiating ATDS calls to the Plaintiff.

39. Defendant(s) never sent Mr. McRae a do-not-call policy.

40. On information and belief, Defendant(s) did not have a written do-not-call policy while it was contacting Plaintiff with unsolicited calls.

41. On information and belief, Defendant(s) did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

42. Defendant(s) knowingly used misleading caller ID information while making calls to Plaintiff and failed to properly identify as required under the TCPA.

### Defendants Illegal Telemarketing Practices

43. At all times relevant to the claims alleged herein, Defendant(s) were aware its employees and/or agents were sending pre-recorded ATDS calls en masse to people, including Plaintiff.

44. Defendant(s) had the power to stop these spam campaigns.

45. Defendant(s) had the power to fire the managers and employees taking part in the day-to-day operations of these telemarketing operations. Despite complaints about these practices, Defendant(s) continued to use the services of the exact same telemarketers and/or employees.

46. Defendants allowed the calls to continue and the responsible managers to keep their jobs—despite their knowledge that a do-not-call policy was not maintained as required by

the TCPA.

### The Plaintiff's cell phone is a residential number

47. The calls at issue here were to the Plaintiff's cellular phone 248-420-4042, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, to monitor his heart rate and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

### Violations of the Texas Business and Commerce Code 305.053

48. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing ATDS calls to a cell phone which violates 47 USC 227(b).

49. The calls by the Defendants violated Texas law by displaying misleading caller ID information per 47 USC 227(e) which in turn violates the Texas statute.

### I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls calls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. McRae realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A) by making non-emergency robocalls calls to Mr. McRae cellular telephone using ATDS and artificial pre-recorded messages without his prior express written consent.

3. Mr. McRae is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. McRae is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. McRae also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency ATDS and pre-recorded message calls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against all Defendants)

6. Mr. McRae realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3]

    c. failing to identify telephone number or address during the calls at issue in violation of 47 C.F.R. § 64.1200(d)(4).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

8. Mr. McRae is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. McRae is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. McRae also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they implement a do-not-call list and training thereon.

### III. THIRD CLAIM FOR RELIEF:

**Violations of The Texas Business and Commerce Code 305.053**

**(Against all Defendants)**

11. Mr. McRae realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053 by making non-emergency ATDS calls to Mr. McRae's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq and using misleading caller ID information while doing so. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. McRae is entitled to an award of at least $500 in damages for each such violation.*Texas Business and Commerce Code 305.053(b)*

14. Mr. McRae is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. *Texas Business and Commerce Code 305.053(c).*

WHEREFORE, Plaintiff Demetrius McRae prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000.00 per call in statutory damages arising from the TCPA's intentional violations jointly and severally against the corporation and individual for each and every call.

E. An award of $1,500 in statutory damages per call arising from violations of the Texas Business and Commerce code 305.053.

F. An award to Mr. McRae of damages, as allowed by law under the TCPA;

G. An award to Mr. McRae of interest, costs and attorneys' fees, as allowed by law and equity under Texas Business Code 17.46.

H. Such further relief as the Court deems necessary, just, and proper.

Respectfully submitted:

/s/ Leland McRae

_____

**Leland Garrett McRae**
**SBN 24086374**
**1150 N. Loop 1604 W, Ste 108-461**
**San Antonio, TX  78248**
**Phone: 210-569-0434**
**FAX: 210-493-6080**
**EMAIL: leland@lelandmcrae.com**

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Plaintiff's Original Complaint was served on all named Defendant(s).

/s/ Leland McRae

_____

 Leland McRae